IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| KAREN FACTORY, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-CV-00731-CAN |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits and supplemental security income [Dkt. 1]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **AFFIRMED**.

### BACKGROUND

### I.  PROCEDURAL HISTORY OF THE CASE

On May 24, 2013, Karen Factory ("Plaintiff") filed applications for disability income benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), alleging an onset of disability date of September 27, 2012 [TR at 208-14]. Plaintiff's application was initially denied by notice, and again upon reconsideration, after which Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id*. at 146-152, 161. The ALJ conducted a hearing on November 5, 2014 ("Hearing"), and heard testimony from Plaintiff, witness Quentin Salmond and Vocational Expert Donald Anderson ("Mr. Anderson" or "VE").

*Id*. at 63-92. Plaintiff was represented by counsel at Hearing. *Id*. On February 17, 2015, the ALJ issued his decision denying benefits, and found Plaintiff not disabled at step five of the prescribed sequential evaluation process (discussed *infra*). *Id*. at 45-62. On August 21, 2015, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. *Id*. at 1-5.

On October 20, 2015, Plaintiff filed her Complaint with this Court [Dkt. 1]. On April 11, 2016, the Administrative Record was received from the Social Security Administration ("SSA") [Dkt. 8]. On April 14, 2016, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 11]. Plaintiff filed her Brief on September 14, 2016 [Dkt. 26]. On November 14, 2016, the Commissioner filed her Brief in Support of the Commissioner's Decision [Dkt. 28].

## II. STATEMENT OF RELEVANT FACTS

### 1. *Age, Education, and Work Experience*

Plaintiff was born on July 12, 1954, making her fifty-eight years of age on the date of alleged onset, and sixty on the date of determination [TR at 208]. Plaintiff completed high school. *Id*. at 239-40. Her past relevant work experience is in medical sales. *Id*. Plaintiff was a "person of advanced age" on the date of decision. *See* 20 C.F.R. § 404.1563(e).

### 2. *Summary of Relevant Medical Treatment*

Plaintiff had dental implant surgery in September 2012. [TR at 308]. Thereafter, Plaintiff complained of "severely increased pain along the left side of jaw" and reported experiencing "dull, constant burning" pain and numbness. *Id*. On November 8, 2012, Plaintiff presented with these symptoms to neurologist Shari Rosen-Schmidt, M.D. *Id.* It was determined that Plaintiff was experiencing post-surgical infection requiring treatment with antibiotics, and one implant was removed after it was found to have been touching a nerve. *Id*. Plaintiff further reported to Dr. Rosen-Schmidt

that she had a recent instance of blurred vision and had increased pain when talking or chewing. *Id*. On examination, Dr. Rosen-Schmidt noted decreased sensation in the fifth cranial nerve (the trigeminal) with loss of sensation in the V1, V2, and V3 distributions but no loss of strength or facial symmetry. *Id.* at 309. Dr. Rosen-Schmidt assessed trigeminal neuralgia, prescribed medications, and scheduled an MRI examination. *Id.* at 310. On November 13, 2012, Plaintiff continued to complain of pain and Dr. Rosen-Schmidt conducted a further examination. *Id*. at 304. On December 13, 2012, Plaintiff again saw Dr. Rosen-Schmidt, reporting that "[i]nstead of constant pain, she has occasional intermittent pain" and "hasn't had the stabbing headache in a very long time." *Id.* at 301. On March 14, 2013, Plaintiff saw Dr. Rosen-Schmidt again and reported that she "had another implant taken out 3 weeks ago, which helped with her jaw pain tremendously." *Id.* at 298. Plaintiff reported still being sensitive to contact on her jaw, and could not stand contact with cold items. *Id*. On examination, Dr. Rosen-Schmidt continued to observe decreased sensation in the V3 distribution. *Id* at 299. Plaintiff also seemingly ceased using her prescribed pain medication in this timeframe. *Id*. at 300.

Plaintiff underwent physical therapy from April to June 2013, with no significant changes in her condition. *Id*. at 315-325. During this time, Plaintiff saw Dr. David Garza for complaints of depression, crying spells and decreased concentration. *Id.* at 358. Plaintiff also complained of other symptoms such as loss of vision to Dr. Garza and other medical providers. *Id*. at 407, 431. Thereafter, Cary Conaway, Ph.D., performed a psychological evaluation of Plaintiff. *Id*. at 329-34. On August 30, 2013, Plaintiff reported to Dr. Conaway that she was in "constant pain" due to her trigeminal nerve being severed, and that the pain rendered her unable to focus or concentrate. *Id.* at 330. On examination, Dr. Conaway observed that Plaintiff demonstrated "average persistence and effort," that Plaintiff's "ability to maintain focus and concentration is not significantly limited." *Id.* at 331-33. The records further reflect that Plaintiff displayed a "flatness of affect and limited display of emotion," but "no confusion or reduction in awareness." *Id.* at 332-33. Dr. Conaway diagnosed Adjustment Disorder with Depressed Mood, noting depression and irritability relating to her current medical condition. *Id*.

at 334. Plaintiff also saw psychiatrist Aaron Van Wright, M.D., during this same time frame, for medication management of her depressive problems. *Id.* at 401-03. After trying several different medications, Plaintiff reported discontinuing her medications and Dr. Wright recommended Plaintiff return as needed. *Id*. at 401-08. In this same vein, Plaintiff saw Stephanie Jones, M.D., on November 8, 2013, for pain management follow-up. Id. at 422-23. Plaintiff reported discontinuing all medications for her depressive conditions. *Id*. Then, on November 17, 2014, Plaintiff saw Padraig O'Suilleabhain, M.D., for pain complaints, reporting sharp jaw pains "maybe a couple of times a day," but she can also "go a couple of days without it." *Id*. at 450. At this time, Plaintiff reported taking only Ibuprofen for her pain. *Id*. On examination, Dr. O'Suileabhain observed no facial paralysis or abnormal muscle movements, with reduced sensitivity in the mandible and increased sensitivity on her left temple. *Id*. at 451. Dr. O'Suileabhain opined that Plaintiff's sensation loss was unlikely to be corrected, but that Plaintiff might consider surgical intervention to try to manage her sudden recurrences of pain. *Id.*

　　2.　　*Hearing Testimony*

At Hearing, Plaintiff testified extensively regarding her symptoms and complaints of pain. Plaintiff testified that a dental accident had completely changed her life, that she experienced unpredictable, chronic pain in her mouth and that it felt like "a knife is stuck in [her] lip. [Her] teeth hurt. [Her] mouth hurts. [Her] neck hurts. [She has] stabbing, phantom pains that come uncontrollably." *Id*. at 69. Plaintiff testified she also experiences blurred vision. *Id*. Plaintiff explained that her pain is unpredictable, and varies in intensity from day to day. *Id*. at 69, 71. Plaintiff stated that her pain is more intense with rainy or cold weather, and that she frequently develops headaches from the pain in her mouth. *Id*. at 70. Plaintiff went on to explain regarding the pain in her teeth, "if you have one toothache but when you have a whole row of teeth hurting you can't, I can't concentrate for long periods of time." *Id*. at 71. Plaintiff reported that speaking

causes more pain and that nothing can touch her face without severe pain. By way of example, she explained that her husband cannot kiss her due to the pain, that the wind touching her causes pain, and that she cannot sleep at night because even the bed covers touching her face cause significant pain. *Id*. at 70. Plaintiff also reported that her fingers, hand and neck are often numb. *Id*. Plaintiff was specifically asked how often she had pain, to which she responded "[n]ot every day but most days the pain is there. . . . On some days I feel better but most days the chronic pain is there and I have no control when I have these stabbing pains." *Id*. at 71. Plaintiff's husband, Quentin Salmond, also testified at hearing. *Id*. at 83. Mr. Salmond's testimony largely mirrored Plaintiff's own statements concerning her pain and other symptoms. He testified that he very seldom sees Plaintiff when she is not in pain. *Id*. at 86.

## III. FINDINGS OF THE ALJ

### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if

he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In this case, the determination was made at the fifth step concerning whether Plaintiff demonstrated impairments which prevented her from performing a significant number of jobs in the economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). At this juncture, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which Plaintiff can perform, consistent with her medically determinable impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). Once the Commissioner finds that jobs in the national economy are available to the claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2012, and any work done after that date was not performed at a substantial gainful activity level [TR at 50]. At step two, the ALJ determined that Plaintiff had the severe impairment of affective disorder. *Id*. The ALJ further noted at step two that Plaintiff has other impairments of trigeminal neuralgia, degenerative disc disease of the cervical spine, and hypertension, which he adjudged to be not severe. *Id.* at 50-51. At step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 51. At step four, the ALJ found that Plaintiff had the residual functional

capacity to perform a full range of light work at all exertional levels but with the following nonexertional limiations: she can perform only simple, repetitive tasks with no more than occasional contact with the general public. *Id*. at 54. Continuing the step four analysis, the ALJ then determined that Plaintiff was not able to perform her past relevant work. *Id*. at 56. The ALJ, made findings at step five, that Plaintiff's residual functional capacity allowed her to perform work that existed in significant numbers in the national economy, including as a folder, garnisher, and pairer. *Id*. at 57. Based on this determination, the ALJ concluded Plaintiff was not disabled from September 27, 2012 through February 17, 2015, the date of the ALJ's decision. *Id*. at 58.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750

F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

**ANALYSIS**

Plaintiff argues that the ALJ erred in two respects. She argues that he erred in failing to recognize all of Plaintiff's severe impairments at step two of the sequential disability analysis, and in assessing or evaluating Plaintiff's subjective complaints [Dkt. 26 at 3].

*I.    The ALJ's Step Two Determination*

Plaintiff contends that the ALJ erred by not including her trigeminal neuralgia as a severe impairment at step two, arguing that the ALJ's severity finding is "somewhat confusing," "internally inconsistent," and does not adhere to the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1984). *Id*. at 3-10. At step two of the sequential evaluation process, the ALJ "must consider the medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii),(c) (2012). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam). In the Fifth Circuit, whether an impairment is "severe" is determined by applying the standard in *Stone*. Under that standard (often referred to as the severity standard), an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101. In other words, "the claimant need only . . . make a *de minimis* showing that [her] impairment is severe enough to interfere with her ability to do work." *Anthony v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir. 1992) (citation omitted). When determining whether a claimant's impairments are severe, an ALJ is required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone,

would be of sufficient severity. *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000) (citing 20 C.F.R. § 404.1523) (finding that an ALJ is required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, would be of sufficient severity). The claimant has the burden to establish that his impairments are severe. *See Bowen v. Yukert*, 482 U.S. 137, 146 n.5 (1987).

In this case, at step two, the ALJ noted that, in addition to affective disorder (which was determined to be a severe impairment), Plaintiff "also [had] the impairments of trigeminal neuralgia, degenerative disc disease of the cervical spine, and hypertension, which do not impose any limitations in her ability to perform a basic work activity, except when considered in combination with her severe impairments, and as affects [sic] solely her mental activities due to symptoms of pain." [TR at 50]. The ALJ expressly found these additional impairments, including specifically her trigeminal neuralgia (which is the primary focus of Plaintiff's appeal), were not severe. *Id.* The ALJ in reaching this determination discussed Plaintiff's symptoms associated with her trigeminal neuralgia, ultimately concluding that when contrasted against the objective medical evidence, her trigeminal neuralgia would not limit her ability to perform any basic work activity. *Id.* at 51. Plaintiff argues that in combination her impairments are severe, and further that Plaintiff's mental impairment (affective disorder)—which the ALJ did find severe—stems from her pain, and the pain results from Plaintiff's trigeminal neuralgia, thus rendering the ALJ's findings internally inconsistent [Dkt. 26 at 4]. Plaintiff also argues that the medical records are replete with evidence of Plaintiff's pain. *Id.* at 4-8. The Commissioner responds that ALJ properly considered the appropriate medical evidence, assessed Plaintiff's severe impairments, and then proceeded beyond step two [Dkt. 28 at 4]. The Commissioner also argues that because the ALJ

proceeded beyond step two, Plaintiff cannot demonstrate prejudice, even if the trigeminal neuralgia should have been considered as a severe impairment. *Id*.

The Fifth Circuit has stated that a failure to make a severity finding at step two is not reversible error when an ALJ continues with the sequential evaluation process. *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) ("[B]ecause the ALJ proceeded to step five of the analysis, any failure to find additional impairment severe at step two does not justify remand."); *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012) (*Stone* error does not require automatic remand where ALJ proceeds past step two); *Herrera*, 406 F. App'x at 903 (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (noting the ALJ's failure to make a severity finding at step two was not a basis for remand where the ALJ proceeded to later steps of the analysis); *Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) (per curiam) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found."); *McDaniel v. Colvin*, No. 13-CV-989, 2015 WL 1169919, at *3 (N.D. Tex. Mar. 13, 2015) (recognizing Fifth Circuit has clarified that remand is no warranted when the ALJ proceeded to later steps of the analysis); *Golas v. Colvin*, No. 3:13-CV-4110, 2014 WL 2587633, at *10 (N.D. Tex. June 10, 2014) ("Remand is not warranted when, even where the ALJ did not explicitly determine the severity of certain impairments, the ALJ proceeded to later steps of the analysis."); *Nejmeh v. Colvin*, No. 4:14-CV-816, 2016 WL 642518, at *2 (N.D. Tex. Feb. 18, 2016) (discussing Fifth Circuit clarification in *Taylor* that *Stone* error does not require remand unless claimant harmed); *Williams v. Colvin*, No. 4:14-1526, 2015 WL 730009, at *10 (S.D. Tex. Feb. 19. 2015) (remand based on step two not required where ALJ proceeded through remaining steps of sequential analysis). The rationale being that the severity finding at step two is a threshold assessment that allows the ALJ to dismiss a claim without further evaluation. *Delgado v. Colvin*, No. 5:13-cv-137, 2014 WL

3361752, at *3-4 (N.D. Tex. July 9, 2014). And, thus, when an ALJ proceeds past step two, the case does not turn on the question of severity, but, instead, whether the claimant's impairments prevent her from performing work. *Id*.

The ALJ in this case did not end his inquiry at step two, rather, he proceeded past step two and made his determination at step five of the sequential evaluation [TR at 51-58]. Again, at step two the ALJ expressly found that Plaintiff's trigeminal neuralgia was not severe. *Id*. at 51. The ALJ then proceeded through each of steps three, four and five. At step four, in determining Plaintiff's RFC, the ALJ clearly noted that he considered all of the medical evidence, including "claimant's allegations" regarding pain, which the ALJ found lacked substantial support from objective findings in the record. *Id*. at 55. The ALJ's determination clearly demonstrates that, while he did not include trigeminal neuralgia in the list of severe impairments, he acknowledged and considered the impact of her symptoms (discussed further *infra*). Accordingly, even if the ALJ erred by finding Plaintiff's trigeminal neuralgia was not severe, the error was harmless because he proceeded beyond step two. Remand is not required on this issue.

## II. The ALJ's "Credibility" Determination

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints, predominantly her claims of pain, mental impairment, and vision impairment, making an improper credibility determination that was not supported by substantial evidence [Dkt. 26 at 11]. The Commissioner responds that the ALJ considered Plaintiff's complaints, and found her claims were not consistent with the objective medical evidence [Dkt. 28 at 7]. The Commissioner thus argues the ALJ properly declined to credit Plaintiff's descriptions of her symptoms. *Id*. at 7-11.

As an initial matter, the Court addresses Plaintiff's contention that to assess Plaintiff's subjective complaints the Court should retroactively apply SSR-16-3p in this case [Dkt. 26 at 11]. Social Security Ruling SSR 96-7p—that was in effect at the time of the ALJ's decision—sets forth a two-step process for evaluating a claimant's subjective complaints. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Effective March 16, 2016, the Social Security Administration eliminated "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1020935, at *1 (Mar. 16, 2016). However, when the ALJ issued the decision here, SSR 96-7p was the relevant social security ruling and specifically used the term "credibility." SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996). Thus, the Court finds that the credibility finding at issue is properly analyzed under SSR 96-7p. *See Mayberry v. Colvin*, No. CV G-15-330, 2016 WL 7686850, at *5 (S.D. Tex. Nov. 28, 2016), *adopted by* 2017 WL 86880 (S.D. Tex. Jan. 10, 2017) (noting that "[b]ecause the text of SSR 16–3p does not indicate the SSA's intent to apply it retroactively, the Court would be disinclined to do so"); *see also Buchanan v. Berryhill*, No. 3:15-CV-3287-BH, 2017 WL 998513, at *9 n.4 (N.D. Tex. Mar. 14, 2017) (same).[1]

Under SSR 96-7p, the ALJ must first consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities. *Id.* For this purpose, whenever the claimant's statements concerning the intensity, persistence, or limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ

---

[1] The Court notes that even if SSR 16-3p applied retroactively, the outcome herein would remain the same.

must make a credibility finding regarding the claimant's statements. *Id.*; *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1985)). The ALJ's credibility determination must be based on consideration of the entire record, including medical signs and laboratory findings, and statements by the claimant and her treating or examining sources concerning the alleged symptoms and their effect. SSR 96-7p, 1996 WL 374186, at *2. The ALJ must also consider a non-exclusive list of seven relevant factors in assessing the credibility of a claimant's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *3. Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. The decision must merely sufficiently specify those factors that were considered. *See e.g.*, *Giles v. Astrue*, 433 F. App'x 241, 249 n.30 (5th Cir. 2011); *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005). In this same regard, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *Falco*, 27 F.3d at 164. The ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (per curiam). As the ALJ is in the best position to assess a claimant's

credibility, since he "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco*, 27 F.3d at 164 n.18; *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (explaining that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled). With respect to the assessment of pain, the Fifth Circuit has also offered additional guidance:

> Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. Subjective complaints of pain must also be corroborated by objective medical evidence.

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (internal citations omitted); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985) (the mere existence of pain is not an automatic ground for obtaining disability benefits).

Here, the ALJ acknowledged that Plaintiff's medically determinable impairments could be expected to cause some of her alleged symptoms, but he concluded that her testimony was not fully credible [TR at 55-56 ("[a]fter careful consideration of the record as a whole, the undersigned finds that the claimant's medically determinable impairments can reasonably be expected to produce some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms have been determined to diminish the capacity for basic work activities only to the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence and the above residual functional capacity for the reasons explained in this decision.)]. The ALJ further expressly noted the credibility factors listing in SSR 96-7p and addressed several of them, although not in a formalistic fashion [TR at

51-54]. He discussed Plaintiff's alleged symptoms (including the alleged frequency and intensity), the diagnoses of her doctors and their related treatment, her past surgeries, his observations of her at the hearing with respect to her daily activities and the medical evidence related to same (such as speaking and communicating). *Id.* He also noted the inconsistent statements regarding the duration and frequency of the pain and that her current medication is an over-the-counter medication. *Id.* The ALJ specifically compared Plaintiff's testimony concerning her impairments and the impact of her pain on her ability to work to the objective medical findings in the record, her history of medical treatment, and her activities of daily living. *Id.* The ALJ's discussion shows that he relied primarily on the medical evidence of record to find Plaintiff not credible. Although not in a formalistic fashion, he considered the factors for determining credibility and adequately explained his reasons for rejecting her subjective complaints. The ALJ's decision is sufficiently specific to show that the regulatory factors were considered. Accordingly, there is substantial evidence to support his determination. Remand is not required on this issue.

## CONCLUSION

The Court concludes that the ALJ properly conducted the sequential analysis and found that Plaintiff was not disabled. Pursuant to the foregoing, the decision of the Commissioner is **AFFIRMED**.

**SIGNED this 29th day of March, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE